MARTHA C. PHIPPS, plaintiff in error *vs.* JAMES H. MOR-
ROW, Ordinary, *et al.*, defendants in error.

*Prima facie,* an Ordinary of a county has no right to settle a debt due
the county by a defaulting public officer, by taking land in payment of
the debt, as the property of the county, and in a suit in the name of
the Ordinary to recover the land, the burden is upon the Ordinary to
show that it was necessary to take the land to save the debt, or that
the land was taken for some specific public purpose for which the
county authorities may buy land for the county. But if this be shown,
as that it was necessary to save the debt, or the land was bought for
such specific purpose, and under such circumstances as would give the
Ordinary the right to buy, that makes out a case where the Ordinary
may sustain the action, other proper title being shown.

County matters. Ordinary. Officer. Deed. Before Judge
HOPKINS. Clayton Superior Court. September Term, 1872.

Martha C. Phipps filed her bill against James H. Morrow,
as Ordinary of Clayton county, James R. Phipps and his
wife, Mary Phipps, making, substantially, the following case:

Richard Phipps, the husband of the complainant, furnished
a fund to the defendant, James R. Phipps, for the purpose of
purchasing a home for complainant. James R. Phipps made
the purchase, but took the title in his own name instead of in
that of complainant, and afterwards conveyed the land to the
defendant, Morrow, as Ordinary of Clayton county, his wife,
Mary Phipps, signing the deed with him. Complainant prays
that the deed made by James R. Phipps be set aside, that the
land be delivered up to her, that the deed conveying the land
to James R. Phipps be canceled, and that the title to the land
be decreed to be in her.

The answer of Morrow, as Ordinary, alleges that James
R. Phipps had been treasurer of Clayton county, and in the
transaction of the duties of his office had become indebted to
the county in the sum of $1,700 00; that defendant assumed
control of the indebtedness, and accepted in satisfaction there-
of a deed to the land executed by the defendants, James R.
Phipps and Mary Phipps; that thereby, there was vested in

defendant, for the use of the county of Clayton, a valid title to said property.

The evidence made the case presented by the bill and answer. The charge of the Court is unnecessary to an understanding of the case, except as contained in the assignments of error. The jury returned a verdict for the defendants.

The complainant assigns error as follows:

1st. The Court erred in charging the jury, "that if Morrow was Ordinary of Clayton county, and James R. Phipps was indebted to Clayton county, Morrow, as Ordinary, had the right and power, under the law, to control that indebtedness and to agree to a settlement, and to accept a deed to the land in settlement of Phipps' indebtedness."

2d. The Court erred in charging the jury, "that if Morrow was Ordinary at the time, and that, in satisfaction of said indebtedness, (no matter when it arose) he received from James R. Phipps a title to the land in question, and without any notice, actual or constructive, of the claim of complainant to it, the land and its title in his hands would be protected from her claim, and the verdict should be for the defendant."

A. W. HAMMOND & SON; W. WATERSON, for plaintiff in error.

JOHN L. DOYAL; E. W. BECK; SPEER & STEWART, for defendants.

McCAY, Judge.

Had the Ordinary of Clayton county the right under the facts set forth in this record, to purchase the land in dispute? It is settled in this State that the old Inferior Court, Ordinary, County Commissioners, etc., who have charge of county affairs, have no powers except those expressly granted, or such as arise by necessary implication from the powers actually granted: See *Dent vs. Cook*, 45 *Georgia*, 325. There is no pretense that there is any grant of a general power to an Ordinary to buy land, or that there is any necessary implication

Phipps *vs.* Morrow *et al.*

of such a power from the powers granted. All that can, with any show of reason, be contended for, is that there are purposes and circumstances, in and for which, this power may very fairly be implied. And this is doubtless true. The county *needs* land, say for a jail, Court-house, and other public buildings; and there is special provisions authorizing the purchase of land for a poor-farm. But this is a very different thing from the general rights of an Ordinary to purchase and hold such land for the county, as he may see fit. We do not think he has any such power, and we think the cases we have referred to establish it. We are inclined, too, to think that perhaps, an Ordinary might, if it were *necessary* for the collection of a debt due the county, take land for the debt, instead of money. But this would be a very dangerous power, and if exercised, it should be only under circumstances where the necessity was obvious : See 16 Sergeant & Rawle's Reports, 592. The Ordinary is a mere *public agent.* He is not the public. It often happens that these officers are neither wise nor unselfish men, and we think the laws very wisely require them to keep, at all times, in their exercise of power, within the very limits of the grant.

There is nothing in this record to show that this land was bought for any of the purposes for which land is, by law, specially authorized to be bought. Nor do the facts show that it was *necessary* to buy this land to save the debt due from the old treasurer. It does not appear that he did not have a good bond and good security. So far as it appears, this purchase may have been a mere favor, either to the treasurer himself or his securities. Such a power we do not think exists by law in the Ordinary, and it would be very detrimental to the public interest if it did.

The only question there is at all in this case, upon which there arises any doubt in our minds, is, upon whom the burden of proof lies in cases like this. Must the Ordinary show his authority, or must the party denying it show the want of authority ? The general rule, in the case of corporations and public agents, undoubtedly is that their power to act must al-

ways affirmatively appear. They are only what the grant makes them. That is the law of their being, and they can exercise only such functions as they are by law authorized to exercise.

An Ordinary in this State stands even upon a more limited footing than this. He is not the county. He is a mere agent of the county. He has certain definite, specific powers as a public officer, and he has no others. In all his acts it ought to appear that he is acting within the scope of his powers, because it is only when he is doing a public duty, cast upon him by law, that his authority to act at all exists. It is always in his power to show the circumstances surrounding his acts. As in this case, if this land was needed for any of the county purposes, or if it was *necessary* to take it to save a debt due the county, it is in his power to show it.

We are the more ready to keep Ordinaries and public officers of the like character within this strict rule, because, by our present laws, county affairs are in the hands, generally, of one man, and the whole genius of our county organization makes it almost a public necessity that these officers shall confine themselves strictly within the limits of their express powers, or of such necessary implications as are required for the use of their expressly granted powers.

Judgment reversed.