HOSKINS v. CITY OF ORLANDO, FLA.

No. 6111.

Circuit Court of Appeals, Fifth Circuit.

Aug. 18, 1931.

**902**

Paul Beckett, of Orlando, Fla., for appellant.

C. P. Dickinson, of Orlando, Fla., for appellee.

Before FOSTER, SIBLEY, and HUTCHESON, Circuit Judges.

SIBLEY, Circuit Judge.

Hoskins sued the city of Orlando at law to recover two annual installments of $10,000 each, with interest, claimed to be due on a purchase from him of a ninety-nine year lease on certain real estate in the city. His declaration was dismissed on general demurrer, and he appeals. The declaration has attached as Exhibits A, B, D, and C, respectively, a copy of the lease, its assignment by the first lessee to the plaintiff, a contract between plaintiff and the city of Orlando by its mayor for the purchase of the lease, and an assignment of the lease by the plaintiff to the city under certain conditions and covenants. All are instruments under seal.

We are first confronted with the question whether these instruments are a part of the pleading on demurrer under the Florida practice and the Conformity Statute (28 USCA § 724). Common-law pleading obtains in Florida with statutory modifications. Though exhibits were commonly used in chancery practice, they were unknown to the common law. A writing relied on by the common-law pleader was alleged according to its legal effect, or, if that was doubtful, the pertinent provisions might be set forth verbatim. No reference to any document imported it into the pleading. An unsealed writing was merely evidence, and not to be produced until the trial; but if a deed were relied on, because of the estoppel incident to it, it had to be produced in court by the pleader, and profert made of it. The opposite party might then demand oyer of it, that is, to hear it read, and thereupon he might found a demurrer on it by reciting its

contents in his demurrer, and it was then treated as a part of the pleading of the party who produced it. Stephen, Pleading, p. 66, and ff. 437; 44 C. J., Pleading, §§ 865, 870, 875. By the statutes of Florida profert and oyer of deeds is abolished. Comp. Gen. Laws 1927, § 4292. But by section 4313 (2), "all bonds, notes, bills of exchange, covenants and accounts upon which suit may be brought, or a copy thereof, shall be filed with the declaration." The statute requires mere filing with, and not attachment as an exhibit to the declaration, and it has been consistently held by the Supreme Court of Florida not to result in making the paper a part of the declaration on demurrer. A contrary view of a similar statute was taken by the Supreme Court of the United States in City of Nauvoo v. Ritter, 97 U. S. 389, 24 L. Ed. 1050. Nevertheless, the practice of attaching exhibits to the declaration has been persisted in, and it is now held by the Florida court that an attached exhibit may by apt words in the declaration be made a part of it; and without such words, if it be so treated in the lower court the reviewing court will likewise so regard it. State v. Seaboard Air Line Ry., 56 Fla. 670, 47 So. 986; National Surety Co. v. Williams, 74 Fla. 446, 77 So. 212; Shelton v. Eisemann, 75 Fla. 644, 79 So. 75; Reinschmidt v. Crosby, 98 Fla. 365, 123 So. 755, 124 So. 4. According to Strout Farm Agency v. Hollingsworth, 92 Fla. 673, 110 So. 267, 268, where the declaration refers to an instrument and adds "copy of which is hereto attached as Plaintiff's Exhibit A," and refers to another, adding "a copy of which is attached hereto as a part hereof, and marked Plaintiff's Exhibit B," the latter is to be considered a part of the declaration on demurrer but the former is not. By this test Exhibits A, B, and C in the suit at bar are not part of the declaration, but Exhibit D is. We think the distinction too refined and unreasonable to require its application in the federal courts under the Conformity Act. Where the plaintiff alleges that an instrument exists, and asserts that an attached paper is a copy of it, he must intend that his opponent and the court shall read it, and cannot complain that the assertion in his declaration is taken at its face value. In substance he has incorporated the paper into the declaration. If his opponent makes no objection to the impropriety in form according to common-law standards, but as in this case expressly founds his general demurrer in part upon the contents of the exhibits, and the court sustains the demurrer, neither plaintiff nor defendant is in any position to contend that the reviewing court should not treat the annexed exhibits as a part of the declaration. This we will accordingly do.

From the declaration and the exhibits it appears that in April, 1925, the owner of a lot of land in the city of Orlando, upon which was a building referred to as the Boardman Apartments, leased the same for ninety-nine years for a monthly rental of $300, with deposit of a reserve fund of $3,600 to secure rents and performance of other covenants. The lessee is by the terms of the lease to keep the premises in repair and insured against fire and storm, with loss payable to lessor, the insurance to be used in rebuilding. The lease is assignable only on lessor's written consent. It is forfeitable at lessor's option on numerous conditions, but nothing is to suspend or abate the rent or end the lease at the instance of the lessee, except that within a limited period he may buy the reversion for $50,000. The lease recites two outstanding mortgages of $113,000. The plaintiff bought this lease on the day it was executed for $500. On February 13, 1926, the mayor and city council took action looking to the purchase of the lease and reversion. On the same day the mayor signed the contract with plaintiff which is Exhibit D, whereby the plaintiff was to assign the lease to the city, and the city was to accept the assignment on March 1, 1926, and to pay for it $5,500 cash, $14,500 on March 1st, and $40,000 to be evidenced by four notes, each for $10,000, due in one, two, three, and four years, with interest at 8 per cent. from March 1, 1926, plus $3,600 in six notes due monthly for the reserve fund deposited under the lease. An abstract of title showing fee-simple record title in lessor was to be furnished by plaintiff, and lessor's written consent was to be obtained, and if the city bought the reversion plaintiff was to have a second mortgage for his balance. On March 5, 1926, lessor having consented in writing and the initial payments having been made, plaintiff signed an assignment of the lease to the city; but the instrument provided that it should be held in escrow until the four $10,000 notes and the six $600 notes of even date should be paid, with interest, and it added: "It is further expressly agreed between the parties hereto that in the event default is made in the payment of any of the said last named notes for a period of fifteen days after the same shall become due, that these presents shall then be null and void, and that all moneys theretofore paid hereunder by the said City of Orlando shall be retained by the

said C. H. Hoskins as liquidated damages and as agreed rental for the hereinbefore described premises." This instrument was signed also for the city by the mayor and clerk. It is not averred whether the six $600 notes were paid, or not, but that two of the $10,000 notes were paid, and the last two were not paid. Acts tending to show ratification by the city are also alleged, among them that the city collected the rents on the property. The questions principally argued are: Was the purchase within the power of the city? Was it lawfully authorized? Was the contract as made in accordance with the authority? Has ratification cured defects?

Taking the purchase of the lease alone as it is set up in the declaration, we think the first question should be answered in the negative. Comp. Gen. Laws of Fla. 1927, § 2942, declares that municipal corporations have "full power and authority to take and to hold property, real, personal and mixed, and to control and dispose of the same for the benefit and best interest of the corporation." While power to purchase is not expressly mentioned, we have no doubt that purchases otherwise proper are included. A purchase of land, even for future municipal needs, was held authorized when bonds had been voted therefor in Merrell v. St. Petersburg, 74 Fla. 194, 76 So. 699. But a municipal corporation from its very nature and objects is limited in the property it may purchase, as in the activities in which it may engage. It buys and operates with money raised in the main by taxation, and municipal taxation in Florida is authorized for municipal purposes and none other. Florida Constitution, art. 9, § 5. Outlays of money, and especially debts to be paid in the future, can be made only for purposes expressly permitted by law to a municipality, or necessarily implied in order to accomplish its express powers. McQuillen, Munic. Corp. § 1216; Phipps v. Morrow, 49 Ga. 37; Avery v. United States (C. C. A.) 104 F. 711; Eufaula v. McNab, 67 Ala. 588, 42 Am. Rep. 118. The doctrine of ultra vires is much more strictly applied to it than to a private corporation, for the limits of its power depend on public law which all persons dealing with it are bound to know. "Municipal corporations are established for purposes of local government, and, in the absence of specific delegation of power, cannot engage in any undertakings not directed immediately to the accomplishment of those purposes." Hill v. Memphis, 134 U. S. 198, 10 S. Ct. 562, 564, 33 L. Ed. 887; City of Ottawa v. Carey,

108 U. S. 110, 2 S. Ct. 361, 27 L. Ed. 669. "The authority to purchase and hold property of all kinds relates only to such property as is needed for municipal purposes." Lewis v. Shreveport, 108 U. S. 282, 2 S. Ct. 634, 635, 27 L. Ed. 728. The purchase of land for a golf course was disallowed, though the city had authority to establish parks and playgrounds, in Bradentown v. State, 88 Fla. 381, 102 So. 556, 36 A. L. R. 1297. A city having power to buy and own property for municipal purposes cannot validly agree to buy as a mere investment. Hunnicutt v. Atlanta, 104 Ga. 1, 30 S. E. 500. Nor for the purpose of renting it out or otherwise obtaining income from it. Bates v. Bassett, 60 Vt. 530, 15 A. 200, 1 L. R. A. 166; Bloomsburg Land Imp. Co. v. Bloomsburg, 215 Pa. 452, 64 A. 602. The declaration refers to the property here involved as the "Boardman Apartments," and avers that the city, while in possession, had collected the rents from it. The lease itself requires that the lessee respect and carry out all contracts with the tenants. Neither the action of the council nor the declaration nor its exhibits suggest any proper municipal use for this apartment house. On its face the purchase seems a mere investment, and not within the corporate power. It is not a taxpayer or third party who is attacking the contract, but the city itself while the contract is yet unperformed has repudiated and is resisting it. This neutralizes the original presumption of right official action in making the purchase. The declaration is not a general assumpsit, as in Brown v. Pomona, 103 Cal. 531, 37 P. 503, and Richmond Land Co. v. West Point, 94 Va. 668, 27 S. E. 460, but is a special count undertaking to set up the full facts. It was held in Richmond Land Co. v. West Point that the burden is on the vendor who seeks to force a purchase of land on the city to prove a proper municipal purpose in making it. An apartment house in operation is so remote from the ordinary purposes of municipal government that the purchase of an interest in it is not presumptively valid, but apparently invalid, and the declaration should have alleged, if it could be done, some proper municipal use intended for it. Furthermore, we have not here a mere purchase of an estate for years for a fixed present price of $60,000, but there is involved in addition the assumption by the city as assignee of the lease with the lessor's consent of serious obligations for a period of ninety-eight years. Aside from the burden of insurance, repairs, and rebuilding, there is a fixed rental to be paid of $3,600 each year, $352,800 for

the entire term. Escape by reassignment of the lease is impossible without the consent of the lessor. If we suppose that the city is thus contracting on annual payments for house space for some proper municipal need, the contract is for too long a time. In the absence of express statutory permission, municipalities, even in their proprietary functions, may contract only for a reasonable time. 44 C. J., Munic. Corp., § 2127. A contract for a water supply for thirty-one years where a waterworks system was to be installed on the faith of the contract is the longest one to be sustained that we have found. Reed v. Anoka, 85 Minn. 294, 88 N. W. 981; Little Falls Co. v. Little Falls (C. C.) 102 F. 663. To bind the city to the rental of a house for ninety-eight years at a fixed rate we think is on its face unreasonable. It is true that relief from this obligation might, within a limited period, be obtained by buying the reversion at $50,000; but this is not alleged to have been done, nor are the mortgages alleged to have been paid or released. The plaintiff is seeking to enforce the acceptance of the lease as it stands, separate from and independent of the reversion. He shows no prima facie right to succeed.

We consider, perhaps needlessly, the other questions proposed. Chapter 10973, Special Laws of Florida 1925, requires that "to purchase or sell any real property of said city [Orlando] the said purchase or sale shall be only upon the unanimous affirmative vote of the mayor and all members of the said city council," or else a majority vote of the electors of the city. The minutes of the council copied in the declaration show that the mayor and all four commissioners were present; that the mayor advised that the city could purchase the lots adjoining the fire station property on the north, "and upon motion of Commissioner Ramsey, seconded by Commissioner Newell, it was unanimously agreed that the purchase of the following real estate be approved, and the Mayor and City Clerk authorized to draw up the proper papers." There followed a description of other property and the price to be paid for it, and a description of that here in issue as under a ninety-nine year lease, on which "the price is to be $110,000.00, $60,000.00 for the lease and $50,000.00 for the option to purchase." Assuming, without deciding, that the statute by "real property" means technical realty, excluding a bare leasehold which is a chattel, we think it clear that the city council contemplated a purchase of the fee in this property for $110,000. They refer to it as "real estate." They did not intend to buy the lease without the reversion, nor the reversion without the lease, and did not authorize it. There being no election held, the affirmative vote of the mayor and all the commissioners was necessary to the validity of the authority. We think, however, the minutes fairly construed mean that the motion was put to a vote, and that the mayor and all four commissioners voted for it. 43 C. J., Munic. Corp. § 791. In Steckert v. City of East Saginaw, 22 Mich. 104, relied on as being to the contrary, the statute dealt with required the votes of all the members to be entered at large on the minutes. There is no such requirement in Florida.

But we think the contract made differed materially from the power conferred. Assuming that in authorizing the mayor and city clerk "to draw up proper papers" it was meant that they should also execute them, the power was a joint one, and could not be executed by the mayor alone because it involved the exercise of judgment in drawing up the proper papers and not the mere ministerial act of signing papers already approved. 49 C. J., Powers, § 101; 2 C. J., Agency, § 319. The clerk did not join in the execution of Exhibit D, but did as to Exhibit C. It does not appear who signed the notes referred to in the latter, or what has become of them. Exhibit C would appear to be the joint execution of the authority rather than Exhibit D, which is specially counted on, but for present purposes there is no great difference. The authority was to buy the lease and the reversion, which would have merged and ended the lease. The contract undertook to buy the lease only. There was no concurrent closing of the option on the reversion. The great difference in the obligations of the city which would result has been pointed out above. A special agent to buy a specified amount of property is not authorized to buy either more or less. 2 C. J., Agency, § 225. But if the purchase of the lease may be divorced from that of the reversion, the authority was to pay only $60,000. The contract committed the city additionally to pay $8,000 in interest on deferred payments, and $3,600 for the reserve fund, which, aside from a purchase of the reversion, would never come back to the city until the end of the lease. The drastic conditions in Exhibit C for forfeiture on failure for fifteen days to pay even a $600 note

were beyond any authority given. The city could properly repudiate this partial and perverted execution of its authority to purchase.

But it is alleged that it ratified it by accepting the assignment, paying the initial payments, and two of the $10,000 notes, and by taking possession of the property and collecting the rents, and having it exempted from taxation as city property. There is no allegation that the city council, which is the governing body of the city, did or authorized any of these things, nor, if it did, that it knew at the time all the pertinent facts. Scott v. City of Lincoln, 104 Neb. 546, 178 N. W. 203. Without such knowledge neither ratification nor estoppel by acquiescence or silence would result. McQuillen, Munic. Corp. § 1361; 31 Cyc. 1266, 1275. If the city council had known that the lease alone, carrying the option with the potential credit of $3,600 reserve fund, had been bought, the situation was so different from the acquirement of the fee theretofore authorized as to amount to another transaction. There is nothing to indicate that the council ever saw the lease or considered its terms. A lease carrying an option to purchase is more than a chattel. Thalheimer v. Tischler, 55 Fla. 796, 46 So. 514, 17 L. R. A. (N. S.) 841, 15 Ann. Cas. 863. Another formal, unanimous vote of mayor and all councilmen would seem necessary to ratify its separate purchase. McQuillen, Munic. Corp. § 1362; Astoria v. Am. La. France Co. (C. C. A.) 225 F. 21. But no ratification, however express and formal, could meet the objection that the city is not authorized to buy a ninety-nine year lease with burdensome covenants such as this one has on property under heavy mortgages which does not appear to be for municipal purposes. 43 C. J., Municipal Corporations, § 2118. Estoppel by receipt of benefits has been argued, but is not expressly pleaded. The city is not alleged now to be in possession of the property. The assignment of the lease was never effective because not delivered. All that the city ever got was some rents for an unstated period. The plaintiff got at least $40,000 from the city. We do not think that it appears that the city has received such benefits as to bind it to carry out this transaction. Nor can estoppel be invoked against a municipality to validate that which is unlawful or wholly ultra vires. McQuillen, Munic. Corp. § 1358; 28 Cyc. 279; State v. Murphy, 134 Mo. 548, 31 S. W. 784, 34 S. W. 51, 35 S. W. 1132, 34 L. R. A. 369, 56

Am. St. Rep. 515; Eufaula v. McNab, 67 Ala. 588, 42 Am. Rep. 118; Horkan v. City of Moultrie, 136 Ga. 561, 71 S. E. 785.

Judgment affirmed.