KITCHENS, Justice,
dissenting:
¶32. I respectfully dissent. I would hold that the rule against binding successors is inapplicable in this case. Because Section 41-19-33 evinces a clear legislative intent to abrogate the common law rule against binding successors, the rule is inapplicable to the Commission’s contract with Cleveland. I also would hold that the contract was not void ab initio. I would affirm the judgment of the Chancery Court of Lee County in favor of Cleveland.
A. Because Section 41-19-33 manifests a clear legislative intent to abrogate the common law rule against binding successors, the rule is inapplicable to the Commission’s contract with Cleveland.
¶ 33. The rule against, bindings successors is a common law rule under which, *610 absent express statutory authority, municipal officers may not bind their successors in office in the exercise of their discretionary authority. Smith v. Mitchell, 190 Miss. 819, 1 So.2d 765, 767 (1941). The rule exists so that “each mayor and board of aldermen may in their discretion determine when the powers conferred upon them by law shall be exercised and that one mayor and board of aldermen may 'not bind their successors to' carry out contracts made by the former seeking to take away from the latter rights and powers conferred upon them by law.” Id. (citing Edwards Hotel & City R. Co, v. City of Jackson, 96 Miss. 547, 51 So. 802 (1910)). The “powers of a municipality are given to it, not to the particular [persons] who hold the office.” Edwards Hotel, 96 Miss. 547, 51 So. at 805.
¶34. Section 41-19-33(1) states that “[i]t shall be the duty of such regional commission to administer mental health/intellectual disability programs,” and that “a regional commission ... shall pursue and promote the following general purposes: (a) [t]o establish, own, lease, acquire, construct, build, operate and maintain mental illness, mental health, intellectual disability, alcoholism and general rehabilitative facilities and services designed to serve the needs of the people of the region so desig-nated_” Miss.Code Ann. § 41-19-33(1) (Rev.2013) (emphasis added). This statute mandates that the Commission administer mental health programs. Id. It also mandates that the Commission “pursue and promote” the existence of mental health facilities. Id. As the majority concedes, the statute allows the Commission no choice in whether it administers mental health programs and pursues and promotes the existence of mental health facilities; rather, the Commission must do so to fulfill its statutory mandate. In fact, if the Commission “does not meet the minimum standards and minimum required services established-.for certification [by the State Board of Mental Health]” it “shall be ineligible for state funds from Medicaid reimbursement or other funding sources for those services.” Miss.Code Ann. § 41-19-33(l)(a) (Rev.2013). '
¶ 35. Section 41-19-33 manifests a clear legislative intent to abrogate the common law rule against binding successors when the Commission enters into contracts to fulfill its statutory mandate'. Generally, this Court does not consider a new statute “as reversing long-established principles, of law and equity unless the legislative intention to do so clearly appears.” Lawson v. Honeywell Int’l, Inc., 75 So.3d 1024, 1029 (Miss.2011) (quoting Thorp Commercial Corp. v. Miss. Road Supply Co., 348 So.2d 1016, 1018 (Miss.1977)). Not only does Section 41-19-33 contain language expressly abrogating the common law rule; but the statute, read as a whole, evinces legislative intent for the Commission to enter into contracts free from the rule against binding successors, because the rule would frustrate the Commission’s ability to carry out its statutory directives.
¶ 36. In drafting and enacting Section 41-19-33, the Legislature included expréss language to the effect that the rule against binding successors does not apply to a contract such as the one at issue today. Subsection (1)(Z) states that “[a]ny money borrowed, debts incurred or other obligations undertaken by a commission, regardless of whether borrowed, incurred or undertaken before or after March 15,1995, shall be valid, binding and enforceable if it or they are borrowed, incurred or undertaken for any purpose specified in this section and otherwise conform to the requirements of this paragraph.” Miss.Code Ann. § 41 — 19—33(1)(¿) (Rev.2013) (emphasis added). The Commission’s contract with Cleveland for the construction, lease, and maintenance of a chemical dependency *611 facility was an “other obligation” undertaken by the Commission to fulfill its statutory purpose under Section 41-19-33(l)(a). Section 41 — 19—33(1)(Z) clearly provides that such an obligation “shall be. valid, binding and enforceable_” Miss.Code Ann. § 41 — 19—33(1)(Z). The statute further provides that such an obligation “shall be valid, binding and enforceable if .,. incurred ... before or after March 15, 1995 — ” Miss.Code Ann. § 41-19-33(1)(Z). ' Because obligations incurred before March 15, 1995, are “valid, binding and enforceable,” and obligations incurred after March 15, 1995, are “valid, binding and enforceable,” the Commission’s obligation to Cleveland, which was incurred in June 2000, was “valid, binding and enforceable.” Section 41 — 19—33(1)(¿), which plainly states that obligations incurred by the Commission in furtherance of its statutory purposes before or after March 15, 1995, are “valid, binding and enforceable,” clearly expresses a legislative intent to abrogate the rule against binding, successors when the Commission incurs an obligation in furtherance of a statutory purpose. In fact, the statute could not be more explicit.
¶37. Not only does -Section 41-19-33(l)(i) expressly abrogate the rule against binding successors, but a plain reading of the whole statute shows that the Legislature did not intend for the rule to apply to the Commission’s performance of its statutory duties. -This is because, by severely limiting the Commission’s ability to contract, application of the rule would thwart the Commission’s statutory mandate. Regardless of whether a statute .is ambiguous, “the ultimate goal of this Court in interpreting a statute is to discern and give effect to the legislative intent.” City of Natchez v. Sullivan, 612 So.2d 1087, 1089 (Miss.1992). This Court considers a statute as a whole to determine legislative intent. Lawson, 75 So.3d at 1029 (quoting Manufab, Inc. v. Miss. State Tax Comm’n, 808 So.2d. 947, 949 (Miss.2002)). “In construing a statute, the Court must seek the intention of the Legislature; and knowing it, must adopt that interpretation which will meet the real meaning of .the Legislature.” Pitalo v. GPCH-GP, Inc., 933 So.2d-927, 929 (Miss.2006).
¶ 38. This Court has recognized that a regional mental health-mental retardation commission’s responsibilities under Section 41-19-33 are “fairly broad.” Region VII, Mental Health-Mental Retardation Ctr. v. Isaac, ,523 So.2d 1013, 1016 (Miss.1988). Indeed, Section 41-19-33 grants broad authority to the Commission to enter into many types of contracts in . order to fulfill its statutory duty “to administer mental health/intellectual disability programs certified and required by the State Board of Mental Health.” Miss.Code Ann. § 41-19-33(1)(1) (Rev.2013). To fulfill this purpose, in addition to the powers discussed above to establish, own, lease, acquire, construct, build, operate, and maintain mental health facilities, the Commission is authorized “[t]o enter into contracts: and to make other arrangements as may be necessary, ... with the United States government, the government of the State of Mississippi and such other .agencies or governmental bodies ... for the purpose of establishing ... facilities and services for the care and treatment of persons” suffering from a variety of mental illnesses, including drug abuse. Miss.Code Ann. § 41-19-33(l)(d). The Commission also is expressly authorized, as it did in this case, “[t]o enter into contracts and make such other arrangements as may be necessary with any and. all private businesses, corporations, .,. proprietorships or other private agencies , ” for the same purposes. • Miss.Code Ann,. § 41-19-33(l)(e). The Commission must employ and compensate. necessary personnel and acquire necessary hazard, casualty, workers’ compensation, and pro *612 fessional liability insurance policies. Miss. Code Ann. § 41-19-33(h), (i), (j). The Commission can enter into “agreements or contracts” to provide programs and services for persons with mental illness. Miss.Code Ann. § 41-19-33(l)(k). To fulfill the purposes specified by Section 41-19-33, the Commission is empowered to “borrow money from private lending institutions ... [and] pledge collateral, including real estate, to secure the repayment of money borrowed.... ” Miss.Code Ann. § 41 — 19—33(1)(¿). The Commission can “acquire, own and dispose of real and personal property.” Miss.Code Ann. § 41-19-33(l)(m). The Commission must “provide alternative living arrangements for persons with serious mental illness.... ” Miss,Code Ann. § 41 — 19—33(l)(t). And the Commission is authorized to make purchases and enter into contracts for purchasing. Miss.Code Ann. § 41-19-33(l)(u). The Commission “shall have the authority to create and operate a primary health ■ clinic.” Miss.Code Ann. § 41-19-33(l)(x). Finally, the Commission is directed to “take any action which will promote, either directly or indirectly, any and all of the foregoing purposes.” Miss.Code Ann. § 41-19-33(l)(y).
¶ 39. Each regional commissioner is appointed for a four-year term. Applying the rule against binding successors to the Commission’s actions under Section 41 — 19— 33 would mean that the Commission could not enter into any contract with a duration of longer than four years. Further, most of the Commission’s contracts would be of even shorter duration because they would be entered into during the existing commissioners’ terms of office. As detailed above, Section 41-19-33 authorizes the Commission to enter into a variety of contracts, including, but not limited to, leases, secured and unsecured loans, employment contracts, and insurance policies, for the fulfillment of its statutory purpose. It inconceivable that the Commission could carry out its broad statutory mandate to provide mental health services to the region if the maximum possible duration of its contracts was, at best, four years. Therefore, a consideration of Section 41-19-33 as a whole indicates that the Legislature intended in this instance to abrogate the rule against binding successors.
¶ 40. Yet another feature of Section 41-19-33 evinces the obvious legislative intent that the rule against binding successors does not apply. Under the rule of inclusion unius est exelusio alterius,
where a statute enumerates and specifies the subject or things upon which it is,to operate, it is to be construed as excluding from its effect all those not expressly mentioned or under a general clause, those not of like kind or classifi-. cation as those enumerated.
Lee v. Alexander, 607 So.2d 30, 36 (Miss.1992) (quoting Southwest Drug Co. v, Howard Bros. Pharmacy of Jackson, Inc., 320 So.2d 776, 779 (Miss.1975)). That is, when a statute specifically mentions one circumstance, the implication is that the Legislature intended to exclude other circumstances not mentioned. Id. In Section 41-19-33, the Legislature expressly limited the Commission’s power to enter into certain types of contracts on an indefinite basis. For managed care contracts; contracts that provide facilities and services at a discount; contracts by which the Commission assumes financial risk for provision or delivery of services; contracts for the financial support of nonprofit organizations; and contracts to form, operate, or participate in a managed care entity, the Commission, if its action would affect more than one region, “must have prior written approval of the Department of Mental Health .before [the action is] initiated and annually thereafter.” Miss.Code Ann. § 41-19-33(l)(n)-(r) (Rev.2013). These *613 provisions show that the Legislature fully-considered appropriate limitations on the Commission’s power to contract and specified them in the Commission’s governing statute. The inclusion of these' express limitations on the Commission’s power to contract indicates that the Legislature intended no other limitations to apply.
¶ 41. Additionally, considering, as I must, Section 41-19-33 as a whole also belies the majority’s position that the Commission’s contract with Cleveland im-permissibly impeded its statutory authority “[t]o acquire, own and dispose of real and personal property.” Miss.Code Ann. 41-19-33(l)(m). To reach that conclusion, the majority relies on American Oil v. Marion County, 187 Miss. 148,192 So. 296 (1939). But the statute at issue in American Oil was materially different from Section 41-19-33. In American Oil, a statute gave the board of supervisors the authority to sell and convey county property, and the board of supervisors leased certain county property for twenty-five years. This Court held that the lease exceeded the board’s statutory authority because the statute did not grant the board the power to lease. In this case, Section 41-19-33 grants the Commission both the power to lease and the power to sell real property. Prom a consideration of the statute as a whole, and giving effect to all its provisions, the majority errs by holding that the Commission’s statutory power to sell must defeat its statutory power to lease.
¶42. In conclusion, Section 41-19-33 manifests a clear legislative intent to abrogate the common law rule against binding successors. Section 41 — 19—33(1)(¿) expressly states that obligations incurred by the Commission in furtherance of-its statutory purpose are valid, binding, and enforceable. Considering Section 41-19-33 in its entirety, the Legislature’s broad grant of authority to -the Commission to enter into a wide variety of different contracts to carry out its statutory purpose clearly indicates that the Legislature intended to abrogate the common law rule against binding successors as applied to the Commission. Its inclusion of specific limitations on the Commission’s power to enter into certain types of contracts indicates that, had the Legislature intended to subject the Commission to further limitations on its ability to contract, it would have specified these limitations in the statute. The majority ignores these clear expressions of legislative intent and finds that the contracts of a regional mental health-mental retardation commission will be limited by the rule, against binding successors. It is inconceivable that regional mental health-mental retardation commissions will be able to fulfill their statutory mandate after today’s case, given that they may enter into contracts no longer than the remaining terms of their board members, with a maximum possible length of four years.
B. The Commission’s contract with Cleveland was not void ab initio.
¶ 43. The Commission argues that, notwithstanding the rule against binding successors,-its contract with Cleveland was void ab initio. In contrast to a contract that is voidable at the request of one of the parties, a contract is void ab initio if it seriously offends law or public policy. Hood ex rel. State v. Barbour, 958 So.2d 790, 815 (Miss.2007). The Commission contends that the contract was void ab initio because of its duration, or alternatively, because the contract is, in actuality, a contract that allowed the Commission to borrow money from Cleveland at an illegal interest rate.
¶ 44. I would hold that neither law nor public policy is offended by the Commission’s contract with Cleveland. This was *614 an arm’s length transaction between two parties represented • by counsel. ■ At the hearing, the Commission’s chairman of the board, Mark Ormon, testified that the Commission was “desperate” • to obtain-a new chemical dependency facility to fulfill its statutory directives. The Commission’s minutes, reflect that, after its .negotiations with other potential builders fell through, it contacted Cleveland and began negotiations. After negotiation of the contract terms was complete, the Commission’s members met and approved the “Contract and Lease Agreement” with Cleveland.
¶45. The agreement reached by the Commission and Cleveland provided that the Commission would lease the property to Cleveland for ninety-nine years. Cleveland promised to construct on the property a chemical dependency facility and parking lot, along with landscaping, at his -own expense. The Commission would pay Cleveland $18,000 per month in rental payments as long as it had available state and federal funds sufficient to make the payments. In the event of the Commission’s inability to pay the rent, the Commission would quitclaim its interest in the property to Cleveland. The contract also provided for Cleveland’s upkeep of ■ the facility’s slab, roof, and' outside walls for the duration of the contract.
¶46. The Commission requests that this Court declare the contract void ab initio due to‘its ninety-nine year duration. In support; it cites a Fifth Circuit case, Hoskins v. City of Orlando, 51 F.2d 901 (5th Cir.1931). In Hoskins, the City of Orlando assumed a ninety-eight year lease of an apartment building. Id. at 904. The court held that no statutory authority existed for the municipality’s assumption of the lease, the municipality had identified no appropriate municipal use for the lease, and the lease was a “mere investment” outside the scope of municipal authority. Id. The court stated that “[a]n apartment house in operation is so remote from the ordinary purposes of municipal government that the purchase of an interest in it is not presumptively valid, but apparently invalid, and.the'declaration should have alleged, if it could be done, some proper municipal use intended for it.” Id. The court also found that the contract’s duration was too long because, absent express statutory authority, “municipalities, even in their proprietary functions, may contract only for a reasonable time.” Id. at 905.
¶ 47. Hoskins is not binding authority on this Court, and it is easily distinguished from this case. The Commission is not a municipality, but a political subdivision with a specific statutory grant of authority. And the Commission had clear statutory authority to enter into a lease of this duration. Section 41-19-33 provides that the Commission has a “duty ... to administer mental health/intellectual disability programs,” and that it “shall pursue and promote the following general purposes: (a) [t]o establish, own, lease, acquire, construct,- build, operate and maintain mental illness, mental health, intellectual disability, alcoholism and general rehabilitative facilities and services designed to serve the needs of the people of the region so designated .... ” Miss.Code Ann. § 41-19-33(l)(a) (Rev.2013) (emphasis added). The Commission is expressly authorized “[t]o enter into contracts and make such other arrangements as may be necessary with any and all private businesses, corporations, ... proprietorships or other private agencies, whether' organized for profit ...” to fulfill its statutory duty. Miss.Code Ann. § 41-19-33(l)(e) (emphasis added). Its obligations undertaken “for any purpose specified” in Section 41-19-33 “shall be valid, binding and enforceable.” Miss. Code Ann. § 41 — 19—33(l)(í) (emphasis added). And to promote its statutory pur *615 poses, the Commission is expressly authorized to “take any action.” Miss.Code Ann. § 41-19-33(l)(y) (emphasis added).
¶48. The chancellor found from the undisputed testimony at the hearing that the Contract and Lease Agreement fulfilled the Commission’s statutory purpose under Section 41-19-33(l)(a). Ormon testified that the facility at issue is the only inpatient chemical dependency facility in the region. The Commission’s executive director, Robert Smith, testified that the facility successfully meets the needs of the Commission and those suffering from drug and alcohol dependency. He testified that no other facility is necessary, and that the Commission has no trouble paying the $18,000 per month rent. Plainly, the Commission’s contract with Cleveland allowed it to fulfill its statutory purpose to provide “facilities ... designed to serve the needs of the people of the region_” Miss.Code Ann. § 41-19-33(1) (Rev.2013). The Commission’s contract with Cleveland fulfilled its statutory purpose, and Section 41-19-33(1) authorized it to enter into the contract.
¶ 49. The Commission also argues that the contract actually was an agreement to borrow money from Cleveland at an illegal interest rate. The Commission bases this argument on an alternative finding by the chancellor that the contract was an agreement incurred under Section 41-19-33(1)((). That section grants the Commission the following authority:
To borrow money from private lending institutions in order to promote -any of the foregoing purposes.' A commission may pledge collateral, including .real estate, to secure the repayment of money borrowed under the aúthorify of this paragraph. Any such borrowing undertaken by a commission shall be on terms and conditions that are prudent in the sound judgment of the members of the commission, and the interest. on. any such loan shall not exceed the amount specified in Section 75-17-105. Any money borrowed, debts incurred or other obligations undertaken by a commission, regardless of whether borrowed, incurred or undertaken before or after March 15, 1995, shall be valid, binding and enforceable if it or they are borrowed, incurred or undertaken for any purpose specified in this section and otherwise conform to the requirements of this paragraph.
Miss.Code Ann. § 41 — 19—33(1)(Z) (Rev. 2013). Mississippi Code Section 75-17-105 provides, in pertinent part, that “[ujnless otherwise provided by law, tax anticipation notes and reappraisal notes issued by the State of Mississippi or a county, municipality or political subdivisioh thereof'... shall bear interest at a rate not to exceed eleven percent' (11%) per annum.” Miss;Code Ann. §' 75-17-105 (Rev.2009).
¶ 50. The chancellor found that this subsection allowed the Commission to incur an obligation for the construction of the facility that would be “valid, binding and enforceable” if undertaken to fulfill the Commission’s statutory purpose. The chancellor also found that, even if the contract was considered a loan from Cleveland to the Commission for the construction of the facility, no evidence had been present ed that the interest on the loan exceeded “the amount specified in Section 75-17-105.” The Commission argues that contract was void ab initio because it was a loan from Cleveland to the Commission, and the interest' on the loan exceeded the 11% maximum interest rate allowed' by Section 75-17-105.
¶ 51. I would find that the Commission’s argument that the contract constituted an illegal loan is erroneous for two reasons. First, the contract cannot be considered to be a loan because, by its *616 terms, the contract is a construction, lease, and maintenance agreement. The contract specifically states that the $18,000 per month to be paid by the Commission to Cleveland is a rental payment. In determining the meaning of a contract, this Court looks to the four corners of the agreement. Facilities, Inc. v. Rogers-Usry Chevrolet, Inc., 908 So.2d 107, 111 (Miss.2005). “[Cjourts are not at liberty to infer intent contrary to that emanating from the text at issue.” Id. Therefore, under the contract’s unambiguous terms, the $18,000 per month cannot be deemed installments on a loan repayment.
¶ 52. Second, the Commission relies on information outside the evidence to conclude that the purported loan repayment amount includes an illegal interest rate. The Commission argues that “if the Agreement is a contract to ‘borrow money” and the eighteen-thousand-dollar payment does represent a monthly payment that must be paid for a term of ninety-nine years to pay off the loaned amount of $807,672.82, using simple math, these terms produce an interest rate of 26.743%, more than double the 11% maximum.... ” At the hearing, the Commission attempted to introduce a cost report showing that Cleveland’s cost to build the facility was $807,672.82. Cleveland objected, and the chancellor reserved ruling on the issue, but in the end did not accept the cost report into evidence.[6] Therefore, neither the Commission nor this Court can rely on the cost report as evidence of the facility’s cost of construction.
¶ 53. I would reject the Commission’s argument that its contract with Cleveland was void ab initio.
IV. Conclusion
¶ 54. I would hold that the plain language of Section 41-19-33 manifests a clear legislative intent that the rule against binding successors does not apply to the Commission’s entry into a contract that fulfills its statutory mandate. Further, I would hold that the Commission’s contract with Cleveland was not void ab initio. I would affirm the chancellor’s judgment in favor of Cleveland.
DICKINSON, P.J., COLEMAN AND MAXWELL, JJ., JOIN THIS OPINION.

. Cleveland did not present any evidence of the cost of construction.