G. R. Ramsey and A. B. Herndon, Co-partners Doing Business as Ramsey-Herndon & Company, v. City of Kissimmee.

190 So. 474
Division B
Opinion Filed July 7, 1939

Ellis F. Davis and Dickinson & Dickinson, for Plaintiffs in Error;

O. S. Thacker and G. P. Garrett, for Defendant in Error.

PER CURIAM.—This is the second appearance of this case here. For its former appearance see Ramsey v. City of Kissimmee, 111 Fla. 387, 149 So. 553.

·On December 5, 1927, plaintiffs filed their declaration embodying a special count, and four common counts, seeking to recover for certain engineering services claimed to have been rendered the City of Kissimmee, during the latter stages of the real estate "boom," under an alleged, contract between plaintiffs and the City.

The first amended count, on the contract, alleged the execution of the contract between plaintiffs and defendant on December 2, 1925, and set forth the terms of the contract in *haec verba*. It also alleged that in pursuance of said contract and employment plaintiffs did all work and performed all things, at the time and in the manner required; and that they filed with the City at the time and in the manner provided the estimated cost .of the paving, which estimate was received by the City. The streets included in the paving project were then listed together with the width of each and the estimated cost. Then followed separate lists of streets on which (1) extensions of water mains, (2) sanitary sewers, (3) house laterals and (4) street sewer improvements were alleged to have been made, together with allegations relating to the performance of all duties in regard thereto under the contract. The count alleged the amount due plaintiffs as follows:

"Total estimated cost of project........................$823,972.50
Total estimated cost less Engineering Serv-
ices $792,281.25 @ 1½%................................  11,884.22
To professional and engineering services ren-
dered account storm sewers, water mains,
sanitary sewers, as per contract.....................  18,629.70
     Total  ...............................................................$ 30,514.52
Less credit of $18,616.56
Less credit of   $1,000.00
     Balance  due............................................................$10,897.96."

To the common counts defendant pleaded "never was indebted as alleged," and placed itself upon the country. To the amended first count defendant pleaded (1) never promised as alleged, (2) payment, (3) that plaintiffs did not perform any services under the contract sued upon and (4) that plaintiffs did not do any work for defendant under said contract.   Issue was joined on these four pleas.

After taking writ of error to the Supreme Court, and having the ruling of the trial court, refusing to admit the contract in evidence, reversed, see Ramsey v. City of Kissimmee, 111 Fla. 387, 149 So, 553, a new trial was had.

On the second trial, at the conclusion of plaintiffs' evidence, defendant made a motion to require plaintiffs to elect whether they were suing under the amended first count or under the common counts; and a motion for a directed verdict in favor of defendant.   In denying both motions, the court said, in effect, that even though he was denying both motions at that time, he would probably grant a directed verdict for the defendant on the first amended count at the close of all the testimony.   A recess was then taken, after which Mr. Garrett announced that defendant rested without introducing any evidence, and renewed his motion for a directed verdict in favor of defendant.   After the court stated that it would have to grant the motion for a

directed verdict as to the first amended count, Mr. Dickinson withdrew the common counts from consideration of the jury, and then took a voluntary non-suit as to the first amended count.

Thereafter, the court entered its judgment of non-suit, reciting the substance of all of these proceedings and containing among other things, the following:

"Whereupon the plaintiffs, by their attorneys, elected to stand and submitted to go on trial upon their amended first count of the declaration and withdrew from consideration of the jury the common counts, and thereupon the defendant renewed its motion for a directed verdict in its behalf on the amended first count of plaintiff's declaration, and the court did then and there upon consideration announce that he would grant said motion to direct a verdict for the defendant upon said amended first count of plaintiff's declaration to which ruling the plaintiffs did then and there except and did thereupon, before retirement of the jury, move the Court for a non-suit with bill of exceptions which said motion the court did then and there grant."

From this final judgment writ of error was taken.

Since plaintiffs withdrew the common counts from consideration of the jury before taking their non-suit, the only count remaining was the first amended count on the contract, on which the court announced it would direct a verdict for the defendant.

The result of this procedure in the trial court limits the question for review here as to whether or not the trial court, in announcing that he would direct a verdict for the defendant on the first amended count of the declaration, committed reversible error.

The condition of the transcript of testimony included in this record is such that the case could have been summarily dismissed, as being in violation of the Rules of this Court,

because it is typed on a very thin, translucent quality of paper, and in addition to that is apparently a third or fourth carbon copy of the transcript. However, in order to avoid further delay in the disposition of this litigation which has been in the courts of this State for over eleven years and to save additional costs to the parties, we have taken the time and patience to read this record, including the improperly prepared transcript of the testimony, and give our considered judgment to this case, though we do not by so doing intend that it shall induce other attorneys to violate the Rules of this Court in subsequent cases brought here.

Under the plea of "did not promise as alleged," plaintiffs had the burden of proving due execution of the contract, and we believe their evidence in this regard was deficient.

The charter of the City of Kissimmee provided that the City Commission shall make all contracts involving the expenditure of more than $300.00, and further provided that "the action of the City Commission shall be expressed by ordinance or resolution and a record of the same shall be kept." This Special Charter of the City of Kissimmee was ratified, validated and confirmed by Chapter 9808, Special Acts of 1923. See Ramsey v. City of Kissimmee, 111 Fla. 387, 149 So. 553. When this case was before us in Ramsey v. City of Kissimmee, 111 Fla. 387, 149 So. 553, we denominated the action of the City Commission of October 6, 1925, authorizing the entry into the contract with Ramsey Herndon & Co. as a *resolve,* meaning a resolution, and the city charter was satisfied so far as *authorizing the entry into a contract with Ramsey Herndon & Co. was concerned.*

The contract as drawn by Ramsey Herndon & Co. was presented to the City Commission at the meeting of December 2, 1925, for approval. The record before us fails to show that there was any *motion, resolution* or *ordinance*

adopted approving the contract or putting it into effect. The charter provisions requiring the making of. contracts involving this amount of money to be evidenced by resolution or ordinance were not complied with in this instance. The testimony of plaintiffs' witnesses, which is the only testimony in the record, shows that at the meeting of the City Commission on December 2, 1925, after the proposed contract was read in open meeting, Mr. Katz, one of the Commissioners, said to Mr. Johnston, Mayor-Commissioner, to go ahead and sign the contract. No vote was taken on the question so far as this record shows. Mr. Johnston signed the contract as Mayor-Commissioner and turned it over to Mr. Steed, the City Attorney, and told him "to examine the contract that he had just signed as to its legality and if he found it all right, to submit it to" Ramsey-Herndon & Co. for their signatures. Mr. Steed made some changes in paragraph 4 of the contract, which changes were made in the form of a rider as well as by making some marks on the original paragraph 4. The contract with rider enclosed were the mailed to Ramsey Herndon & Co., and A. B. Herndon signed it for Ramsey Herndon & Co. The rider, which changed paragraph 4 of the contract, was never submitted to the City Commission for its approval or disapproval, and was never passed on or adopted by the City Commission in any manner. Such altered paragraph 4 should have been approved and adopted by the City Commission in the same manner required by the charter for making a contract involving this amount of money. Even assuming for the purpose of illustration here that the Mayor-Commissioner had authority to bind the City by his signature, the contract signed by him was not the contract signed by A. B. Herndon for Ramsey Herndon & Co., and consequently there was no execution by the parties of the contract relied on for recovery.

It is contended that the payment of $1,000.00 on the contract ratified it. This is not sound because the contract must be ratified by the City Commission in the same manner (by *resolution* or *ordinance*) in which it might have been originally adopted. The mere issuance of a warrant *on motion* of the City Commission is not such a ratification of the contract as will, under the provisions of the Charter, bind the City of Kissimmee. See 3 McQuillan on Municipal Corporations (2d. ed.) pp. 970-971, Sec. 1360, and cases there cited.

Persons contracting with a municipality must, at their peril, inquire into the power of the municipality, and of its officers, to make the contract contemplated. See Brown v. City of St. Petersburg, 111 Fla. 718, 153 So. 141; Lassiter v. Taylor, 99 Fla. 819, 128 So. 14, 69 A. L. R. 689.

When this case was before us in Ramsey v. City of Kissimmee, 111 Fla. 387, 149 So. 553, we said:

"Under the charter, the City of Kissimmee was, by its City Commission alone, authorized to make a contract of the kind sued on in this case. And the plaintiffs, in dealing with the City of Kissimmee, and in accepting a paper signed by the Mayor-Commissioner alone, were bound to ascertain the nature and extent of the authority of the Mayor-Commissioner to sign the contract sued on, in behalf of the City. Town of Madison v. Newsome (39 Fla. 149, 22 So. 270), *supra*. If in the first instance there was no such authority given to the Mayor-Commissioner to sign, or if the contract originally unauthorized, but nevertheless signed, has never been ratified by the City Commission so as to bind the City, plaintiffs cannot recover, and the jury should be so instructed."

We find from an examination of the record, that proof of the authority of the Mayor-Commissioner to sign the contract and thereby bind the City is not shown, even

assuming for the moment that the City Charter gave the power to the Mayor-Commissioner alone to sign contracts in behalf of the City, because the City Commission did not, so far as this record shows, take any vote on adoption of the contract when presented to the City Commission in open meeting on December 2, 1925. Neither is there any showing of any formal ratification of the act of signing the contract by the Mayor-Commissioner in the manner required by the City Charter. Applying the above quoted portion of the former decision in this case to the evidence adduced on the second trial, there was nothing left for the trial judge to do except to direct a verdict in favor of the defendant on the first amended count.

The evidence showed that none of the paving was ever done because the bond market went down and the City could not realize enough from the sale of bonds at the prevailing prices to do all the work contemplated. The extension of an old contract with Southern Clay Manufacturing Co. to do the paving work under consideration was ordered by the City Commission on the same date that plaintiffs were ordered by resolve to be employed as engineers, so plaintiffs' estimates of costs could not have been of any assistance to Southern Clay Manufacturing Co. in putting in its bid for the work. Many of the streets selected to be paved were not selected in a lawful manner. Some were selected at one time and some at another by City Commissioners individually, by civic organizations, or by interested groups and plaintiffs notified of the designated streets to be added to the original list. Plaintiffs did work under this purported contract on sanitary sewers, storm sewers and water main extensions, for which they were paid $18,616.56. Much of the engineering work done on the sewer and water main projects could be used on the paving projects and plaintiffs could employ the data for

which they had been paid on the paving project without doing additional work. A. B. Herndon, one of the plaintiffs, testified that there was no way the work done on the sewers and water mains could be separated from the work done on the paving, so as to ascertain the amount of work actually done on the paving exclusive of all other work.

The remedy of plaintiffs, if any they have, is on *quantum meruit*, and not on the contract, and direction of a verdict for the defendant on the count based on the contract would have been proper. Therefore the judgment of non-suit is affirmed.

Affirmed.

WHITFIELD, P. J., and BROWN and CHAPMAN, J. J., concur.

TERRELL, C. J., concurs in opinion and judgment.

Justices BUFORD and THOMAS not participating as authorized by Section 4687, Compiled General Laws of 1927, and Rule 21-A of the Rules of this Court.