## MARKS, et al v. BOARD OF PUBLIC INSTRUCTION OF BROWARD COUNTY.

No. 70-3230.

Circuit Court, Broward County.

October 8, 1971.

Salter, Yeslow & Burnstein and Landefeld & Romanik, all of Hollywood, for the plaintiffs.

Shaw, Marko, Stephany & Lyons, Fort Lauderdale, for the defendant.

LAMAR WARREN, Circuit Judge.

*Final judgment:* This action for injunction was brought pursuant to the provisions of §286.011, Florida Statutes, popularly known as the "Sunshine Law," it being alleged that the defendant board or its members acting in their official capacity violated the statute by holding meetings at which official acts were taken or were to be taken and from which the board excluded the public from being present, from being heard during deliberations and enactments, and from being informed as to the subject matter of such deliberations and enactments.

The complaint alleged specific violations of the statute, including a meeting on January 23, 1970, with Dr. Benjamin C. Willis for the purpose of making a determination regarding the appointment of the Broward County superintendent of public instruction; a meeting on February 18, 1970, where deliberations were conducted by the use of secret coded symbols representing names of persons then under consideration for said position; and on March 18, 1970, where deliberations were conducted so as to conceal and withhold from the public the names, identities, and full qualifications of the person or persons under consideration for said appointment.

The amended answer of the defendant effectually denied the allegations of the complaint, an affirmative defense therein asserting that the defendant on April 15, 1971, at an official meeting, ratified, affirmed and adopted the contract and all prior contracts of employment of the superintendent, Dr. Willis.

The parties subsequently entered into a fact stipulation agreeing that on the above date of January 23, 1970, Dr. Willis met with members of the defendant board and discussed various aspects of

the position of superintendent and his application therefor, without the presence of the public, except that any meeting held in public view was of a purely social nature and that business and appointments were not the subject thereof; that on February 18, 1970, the defendant board held a meeting and deliberated in the presence of the public concerning the appointment of the superintendent, but that deliberations were conducted by the use of secret coded symbols representing names of persons then under consideration for said position, the public not being informed as to the meaning of said symbols, and that the names, identities and full qualifications of the persons under consideration for said appointment were withheld from the public; that on March 19, 1970, as a result of the two above meetings, the defendant board took formal action and appointed Dr. Willis to the position of superintendent, subject to negotiations and preparation of the employment contract by the board attorney; and that on April 15, 1971, the board did ratify, adopt and accept the contracts of the superintendent.

At final argument both parties offered in evidence certain documentary evidence, and rested, it having been agreed that no oral testimony would be required in view of the pleadings, the pretrial order and the stipulated facts.

The statute under consideration, as abbreviated, provides as follows — "All meetings of any board . . . of any county . . . at which official acts are to be taken are declared to be public meetings open to the public at all times, and no resolution . . . or formal action shall be considered binding except as taken or made at such meeting."

In the decision of Times Publishing Company v. Williams (1969), Fla., 222 So.2d 470, in discussing what was meant by the terms "official acts" and "formal action" the court said that, "Every thought, as well as every affirmative act, of a public official as it relates to and is within the scope of his official duties, is a matter of public concern; and it is the entire *decision-making process* that the legislature intended to affect by the enactment of the statute before us. This act is a declaration of public policy, the frustration of which constitutes irreparable injury to the public interest. Every step in the decision-making process, including the decision itself, is a necessary preliminary to formal action. It follows that each such step constitutes an 'official act,' an indispensable requisite to 'formal action,' within the meaning of the act. . . . It is our conclusion, therefore, that with one narrow exception which we will discuss later, the legislature intended the provisions of [the act] to be applicable to every assemblage of a board or commission governed by the act at which any discussion,

deliberation, decision, or formal action is to be had, made or taken relating to, or within the scope of, the official duties or affairs of such body."

In determining that an "official act" occurred, the court commented, in Board of Public Instruction of Broward Co. v. Doran (1969), Fla., 224 So.2d 693, "The right of the public to be present and to be heard during all phases of enactments by boards and commissions is a source of strength in our country. During past years tendencies toward secrecy in public affairs have been the subject of extensive criticism. Terms such as managed news, secret meetings, closed records, executive sessions, and study sessions have become synonymous with 'hanky panky' in the minds of public-spirited citizens. One purpose of the Sunshine Law was to maintain the faith of the public in governmental agencies. Regardless of their good intentions, these specified boards and commissions, through devious ways, should not be allowed to deprive the public of this inalienable right to be present and to be heard at all deliberations wherein decisions affecting the public are being made." The decision amended the final judgment of the lower court, which enjoined the defendant board from the holding of any meeting or conference session, to read ". . . at which are held any discussions on matters pertaining to the duties and responsibilities of the Board of Public Instruction of Broward County."

In City of Miami Beach v. Berns (1971), Fla., 245 So.2d 38, the court stated, "The next question to be determined is whether a city council can hold informal executive sessions at which the public is excluded for the discussion of condemnation matters, personnel matters, pending litigation or any other matter relating to city government. . . . The Legislature intended to extend application of the 'open meeting' concept so as to bind every 'board or commission' of the state, or of any county or political subdivision over which it has dominion or control. . . . The question of whether secret sessions could be held concerning privileged matter was definitely determined in [Doran, supra]. . . . A secret meeting occurs when public officials meet at a time and place to avoid being seen or heard by the public. When at such meetings officials mentioned in [the act] transact or agree to transact public business at a future time in a certain manner they violate the government in the sunshine law, regardless of whether the meeting is formal or informal. . . . The evil of closed door operation of government without permitting public scrutiny and participation is what the law seeks to prohibit. If a public official is unable to know whether by any convening of two or more officials he is violating the law, he should

leave the meeting forthwith. It is the law's intent that any meeting, relating to any matter on which foreseeable action will be taken, occur openly and publicly."

Clearly, the Sunshine Law was violated within its terms and the decisions interpreting the act when on February 18, 1970, the board deliberated by the use of secret coded symbols representing the names of persons then under consideration for the position of county superintendent of public instruction, the names, identities and full qualifications of such person being withheld from the public. The notice of the meeting by the chairman to the board members stated that applicants would be referred to by number and that names would not be released, and attached to the notice was a list of coded symbols. The notes of the meeting itself disclose a full and spirited discussion, pro and con, by the board members of this method of selection.

By the use of such coded symbols the meeting was not "open to the public at all times," and public scrutiny and participation were denied. Such deliberations were violative of the statute, and when on March 19, 1970, as a result of the above meeting and of the prior meeting with Dr. Willis on January 23, 1970, which was out of the presence of the public, the board appointed him to the position of superintendent, its action became not binding and voidable.

The defendant board however asserted in its amended answer that on April 15, 1971, at an official meeting, it ratified, affirmed and adopted the contract and all prior contracts of employment of the superintendent. The stipulation of facts also dealt with ratification.

The minutes of the above meeting show that a motion was made and carried "that the amended contract of the superintendent between the Board of Public Instruction of Broward County, Florida, now known as the School Board of Broward County, Florida, said contract dated December 30, 1970, as reflected in the minutes of the meeting of December 30, 1970, be ratified, adopted, and affirmed; this motion to include all prior contracts of employment for the superintendent, Dr. Benjamin C. Willis, by the board."

Although somewhat awkardly phrased, the intent of a majority of the board to ratify, adopt and affirm as their contract the contract of December 30, 1970, and all prior contracts of employment of the superintendent, is clear.

No statutory requirements or directions were found by the court surrounding the appointment of a superintendent by the school

board, or its entering into contracts of employment with a superintendent, and none was argued.

In 56 Am Jur 2d, *Municipal Corporations, Counties, and Other Political Subdivisions,* §508, it is set out that, "The general rule is that municipal corporations may ratify contracts made on their behalf which they have authority to make. Thus, it is competent for a municipal corporation to ratify a contract and thereby to make it a binding obligation, acting through its authorized agencies and in the manner prescribed by law for making contracts of such a character, if the contract was within its general corporate powers but was invalid because defectively or irregularly executed, or because the officer or agent who purported to execute it on behalf of the municipality had not the requisite authority. . . ." 17 Am Jur 2d, *Contracts,* §7.

It is further set out in §510 that, "When a mandatory mode of execution of a contract is prescribed by statute, the act of ratification of an unauthorized contract must comply with the provisions of the statute regulating the original contract. Ratification must be by acts as formal as those necessary for a valid contract in the first instance. . . ."

A municipal contract must be ratified by the city commission in the same manner in which it might have been originally adopted. Ramsey v. City of Kissimmee, 190 So. 474.

In Attorney General's Opinion 071-58, it was ruled that, ". . . Even if we were to assume that the initial process of selecting a superintendent by a school board would be in violation of the Sunshine Law, this will not affect the validity of a subsequent contract with such superintendent which is itself adopted in strict accordance with section 286.011, F.S. . . ."

It was not argued that the meeting of April 1, 1971, when ratification is claimed, was not in accordance with the Sunshine Law.

The court is therefore of the belief, and holds, that the defendant board validly ratified, adopted and accepted the contracts with the superintendent, Dr. Willis.

In view of the method employed by the defendant in the selection and appointment of the county superintendent of public instruction, it is ordered and adjudged that the board of public instruction of Broward County be and it is hereby enjoined from the violation of §286.011, Florida Statutes, in the selection and appointment of any future county superintendent of public instruction.