[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 24, 2002
THOMAS K. KAHN
CLERK

_____

No.  01-12976

_____

D. C. Docket No. 95-30412-CV-3-LAC


FRANKENMUTH MUTUAL INSURANCE COMPANY,

Plaintiff-Appellee,
Cross-Appellant,


versus


ESCAMBIA COUNTY, FLORIDA,

Defendant-Appellant,
Cross-Appellee.


_____

Appeals from the United States District Court
for the Northern District of Florida

_____

**(April 24, 2002)**


Before BARKETT, HULL and KRAVITCH, Circuit Judges.

BARKETT, Circuit Judge:

The Board of County Commissioners of Escambia County, Florida ("the

County") appeals from a summary judgment in favor of Frankenmuth Mutual

Insurance Company ("Frankenmuth").  The summary judgment order declared enforceable a computer lease-purchase agreement ("the Lease") between the County and Unisys Leasing Corporation, Frankenmuth's predecessor in interest.  Frankenmuth cross-appeals the district court's denial of its motion for costs and attorneys' fees.  We AFFIRM the summary judgment declaring the Lease enforceable and REVERSE the denial of Frankenmuth's motion for attorneys' fees and costs.

**FACTS**

In 1992, the Escambia County Comptroller, Joe Flowers, signed a lease-purchase agreement with Unisys Leasing Corporation to lease a mainframe computer.  In subsequent years, he added additional computer equipment and an imaging system to the Lease under a series of lease schedules.  Paragraph 21 of the lease-purchase agreement contained a "non-appropriation clause," which provided that the agreement would terminate in any given year if the "legislative body or funding authority" should fail to appropriate funds to make the Lease payments.[1]  Additionally, paragraph 21 contained a non-substitution clause, which provided

---

[1]The non-appropriation clause allowed the County to be released from the lease if certain conditions were met, including lack of funding for the lease from any source, proper notice, return of equipment in substantially the same condition in which it was received, payment of any amount due under the lease during the appropriations period in which the default occurred, forfeiture of any security deposits, and payment of any termination charges.

2

that in the event the County refused to appropriate the requisite funds ("non-appropriation"), the County agreed not to purchase or rent any substitute computer equipment for the balance of the appropriation period and for one full period following the termination of the agreement. In a separate addendum, the agreement provided that nothing in the Lease would be construed to constitute a pledge of ad valorem taxes and that, in the event of default, the lessor had no right to compel the County to appropriate funds to make the lease payments.

Flowers made scheduled payments under the lease-purchase agreement for several years without incident, during which the computer equipment was used for a variety of municipal functions, including county payroll and central data processing services, and to service the Road, Mass Transit and Solid Waste Departments. For the years 1992, 1993, and 1994, Flowers submitted his budget requests to the County and included in the Comptroller's budget a line item for "Debt Service on Computer Equipment."[2] Each year the County approved in excess of $300,000.00 to cover this expenditure without any specific inquiry into the details of the lease agreement. During this period, Unisys conveyed its interest in the Lease to Chicorp Corporation, and Chicorp subsequently conveyed its interest in the Lease to Frankenmuth.

---

[2] The budgets that Flowers submitted requested $301,563.00 for the computer leases in 1992, $304,561.00 in 1993, and $304,113.00 in 1994.

In early 1994, the County began studying the advisability of a county-wide computer network. Flowers suggested integrating the County's computer network with the Comptroller's system, and provided the County with information about the Unisys equipment, although he did not send to the County specific information regarding the terms of the lease with Unisys. The County affirmed the decision to integrate the systems at a public meeting held on June 28, 1994.

Later in 1994, the County lost millions of dollars in bad derivative investments made by Flowers' office. Flowers was criminally indicted for various acts of malfeasance, one of which was his decision to enter into the Lease with Unisys without County approval. Flowers pled no contest and resigned from office. In 1995, the Florida legislature abolished the Escambia County Office of the Comptroller, and the Escambia County Clerk of the Circuit Court, Ernie Lee Magaha, became responsible for the constitutional duties formerly held by the Office of Comptroller. Magaha and the County reviewed the Lease and determined that the County should reject the Lease because the Unisys equipment was too old, expensive, and ineffective to serve the County's needs. Consequently, in mid-1995, the County notified Frankenmuth that it would not make its remaining Lease payments for that year and that the Lease was void and unenforceable because Flowers had not been authorized to enter into the agreement without County

4

approval, and he had failed to secure such approval.

In September 1995, Frankenmuth brought this lawsuit seeking both a declaration that the Lease was valid and enforceable and an injunction prohibiting the County from breaching the agreement. During the discovery period, the County purchased a replacement computer system, and Frankenmuth amended its claim to seek only declaratory relief. All parties moved for summary judgment. The district court ruled in part for Frankenmuth, finding that although the non-substitution clause in the Lease was void and unenforceable under Article VII, § 12 of the Florida Constitution,[3] the clause was severable, and, because the County had ratified the Lease, the contract was enforceable without the non-substitution clause.

The County appealed the district court's decision and this Court certified two questions to the Florida Supreme Court, namely: (1) whether a county board of commissioners may approve a lease-purchase agreement under Fla. Stat. ch.

---

[3] Article VII, § 12, prohibits ad valorem taxes from being used for this purpose. It reads:

> Counties, school districts, municipalities, special districts and local governmental bodies with taxing powers may issue bonds, certificates of indebtedness or any form of tax anticipation certificates, payable from ad valorem taxation and maturing more than twelve months after issuance only:
> (a) to finance or refinance capital projects authorized by law and only when approved by vote of the electors who are owners of freeholds therein not wholly exempt from taxation; or
> (b) to refund outstanding bonds and interest and redemption premium thereon at a lower net average interest cost rate.

125.031 absent formal resolution,[4] and, if so, what standards guide consideration of whether such an approval has occurred; and (2) whether the non-substitution clause contained in the Lease violates Article VII, § 12 of the Florida Constitution. Frankenmuth v. Magaha, 769 So.2d 1012 (Fla. 2000). The Florida Supreme Court ruled that a county board may approve an agreement absent an express resolution, and outlined a three-part test for determining whether, under Fla. Stat. ch. 125.031, a Board has ratified an agreement after the fact ("the Frankenmuth test"). The Florida Supreme Court also ruled that the non-substitution clause violated the Florida Constitution and was therefore unenforceable.[5]

In accordance with the Florida Supreme Court's decision, this Court vacated the district court's original summary judgment in favor of Frankenmuth, and remanded the case for a determination of whether the County had ratified the agreement under the Frankenmuth test, and was therefore liable under the contract. On remand, the district court again held that the unconstitutional non-substitution

---

[4]Fla. Stat. ch. 125.031 gives the County general authority to contract for goods, services, and equipment needed for a public purpose as long as the contract does not exceed thirty years.

[5]The Florida Supreme Court explained that "the inclusion of the nonsubstitution clause may be viewed as compelling the lessee to continue to appropriate funds throughout the full lease term, thereby rendering the optional features of the nonappropriation and nonrenewal clauses illusory. . . . [A] non-substitution clause may render a non-appropriation clause illusory, thereby requiring a lease to undergo Article VII, § 12 voter referendum." Frankenmuth, 769 So.2d at 1024.

clause was severable, and therefore did not invalidate the entire lease. The court concluded that the County had ratified the agreement under the Frankenmuth test and that, accordingly, the contract was enforceable against the county. The district court further held that neither Escambia nor Frankenmuth was entitled to attorneys' fees. The County now appeals, arguing that the district court erred in concluding both that the non-substitution clause was severable and that the county had ratified the lease agreement. Frankenmuth cross-appeals from the denial of its motion for attorneys' fees and costs.

The interpretation of an agreement under traditional contract principles is a question of law subject to de novo review. See Brewer v. Muscle Shoals Bd. of Educ., 790 F.2d 1515, 1519 (11th Cir. 1986). We review a district court's decision interpreting a contractual attorneys' fee provision de novo. BankAtlantic v. Blythe Eastman Paine Webber, Inc., 955 F.2d 1467, 1477 (11th Cir. 1992).

## DISCUSSION

## I.      The County's Appeal

The Florida Supreme Court held that the non-substitution clause in the Lease violates the Florida Constitution. Frankenmuth, 769 So.2d at 1023. Accordingly, unless the non-substitution clause is severable, the Lease is not enforceable. The County first argues that the district court erred in concluding that the Lease's non-

7

substitution clause is severable. The County further argues that, even if the non-substitution clause is severable, the district court erred in finding that the County ratified the Lease. We first address the severability question.

## A.     Whether the Lease's Non-Substitution Clause Is Severable

In determining whether a contract provision is severable, Florida courts look to the entirety of the agreement. Wilderness Country Club v. Groves, 458 So.2d 769, 771 (Fla. 2d Dist. Ct. App. 1984) ("[A] contract is indivisible where the entire fulfillment of the contract is contemplated by the parties as the basis of the arrangement.") (quoting Local No. 234 v. Henley & Beckwith, 66 So.2d 818 (Fla. 1953)). On review of a bilateral contract[6] such as the one at issue here, the governing rule is that

> a bilateral contract is severable where the illegal portion of the
> contract does not go to its essence, and where, with the illegal portion
> eliminated, there still remains of the contract valid legal promises on
> one side which are wholly supported by valid legal promises on the
> other.

Williston on Contracts, rev. ed., Vol. 6, § 1782; see also Vineberg v. Brunswick Corp., 391 F.2d 184, 186 (5th Cir. 1968) ("[a]n illegal contract provision, or one contrary to public policy, when invalidated, will be severed from the remainder of

---

[6] Black's Law Dictionary defines a bilateral contract as "[a] contract in which each party promises a performance, so that each party is an obligor on that party's own promise and an obligee on the other's promise." Black's Law Dictionary 319 (7th ed. 1999).

8

the contract if it is possible to do so without leaving the remainder of the contract meaningless.")[7]; Wilderness, 458 So.2d at 771 (a bilateral contract is severable where the illegal provision does not go to its essence). Whether a contract is entire or divisible depends upon the intention of the parties. Ireland v. Craggs, 56 F.2d 785 (5th Cir. 1932). The parties' intention is a matter that may be determined "by a fair construction of the terms and provisions of the contract itself, and by the subject matter to which it has reference." 12 Am. Jur. 2d, Contracts, § 415.

Here, the fact that the contract itself contains a severability provision demonstrates that the parties intended for the contract to be severable.[8] Furthermore, the non-substitution clause does not go to the essence of the contract. The primary promises between the parties remain unchanged in the absence of this clause: the County agreed to pay in excess of $300,000.00 each year to lease the computer equipment, and Frankenmuth and Unysis continued to supply the City with official title to the property and use of the equipment for the lease term. In this case, the non-substitution clause did not go to the essence of the contract between

[7]In Bonner v. Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions handed down prior to the close of business on September 30, 1981.

[8]Paragraph 30 of the contract reads: "Severability: Any provision of this Lease which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability, without invalidating the remaining provisions hereof. To the extent permitted by applicable law, Lessee hereby waives any provision of law which prohibits or renders unenforceable any provision hereof in any respect."

9

the parties. The essential terms remain intact without the non-substitution clause and the remainder of the contract remains meaningful and viable. Thus, the district court did not err in determining that the non-substitution clause in this lease was severable.

Having found that the district court correctly determined that the non-substitution clause was severable, we turn to the question of whether the county ratified the lease-purchase agreement.

**B.      Whether the County Ratified the Lease Purchase Agreement**

In <u>Frankenmuth v. Magaha</u>, the Florida Supreme Court established a three-part test to determine whether a county has ratified an agreement within the definition of Fla. Stat. ch. 125.031:

> First, a board of county commissioners must have the power to approve the agreement. Second, a board of county commissioners must ratify [the] . . . agreement in the same manner in which the agreement would have been initially approved. For example, as we stated above, the approval must be made in accordance with the "Sunshine Law." Additionally, where a charter or ordinance requires a board of county commissioners to take action in a specified manner, such as by passing a formal resolution (unlike the circumstances here), then an after-the-fact approval must satisfy the specified manner to be valid. Finally, in ratifying the agreement in the same manner in which it initially could have been approved, a board of county commissioners must have full knowledge of the material facts relative to the agreement.

<u>Frankenmuth</u>, 769 So.2d at 1022-23. The County argues that none of the three

10

prongs of the Frankenmuth test can be satisfied, and thus, that the district court erroneously concluded that the County ratified the agreement. We discuss each part of the test in turn.

### 1.      Whether the County Had Authority to Enter into the Lease

The County's only argument regarding the first prong of the Frankenmuth test is that the County did not have the authority to enter into the Lease because the non-substitution clause in the agreement violated Article VII, § 12 of the Florida Constitution.  In other words, the County argues that it could not have ratified the contract because it could not have ratified the non-substitution clause absent a voter referendum as required by Article VII, § 12 of the Florida Constitution.  As discussed in Part A, supra, we agree with Frankenmuth that the illegal lease term was a severable or non-essential part of the agreement, and therefore the County could have approved the agreement pursuant to its authority under Fla. Stat. ch. 125.031.  We recognize that in Frankenmuth, the Florida Supreme Court indicated that a government entity commits an ultra vires act when it enters into a contract that violates its constitutional obligations, and in this case the Florida Supreme Court concluded that the non-substitution clause conflicted with the constitutional requirement that the County conduct a voter referendum before entering into a contract that would require a levy of taxes to satisfy its obligations.  See

11

Frankenmuth, 769 So.2d at 1022 (explaining that a city government may not enter into an agreement that purports to contract away the city's police powers); P.C.B. Partnership v. City of Largo, 549 So.2d 738, 740 (Fla. 2nd Dist. Ct. App. 1989) (same). However, unlike P.C.B., where the purpose of the contract was itself unconstitutional, the unconstitutional non-substitution clause here was not a central part of the Lease. Here, the Lease payment terms and schedule were the central parts of the agreement. The non-substitution clause merely served as a supplementary penalty provision that was designed to discourage the County from deciding to cancel the lease before its full term. Therefore, the district court properly ruled that the County's ratification of the agreement was within the County's authority under Fla. Stat. ch. 125.031, and that Frankenmuth had satisfied its burden under the first prong of the ratification test.

2. **Whether the County Ratified the Agreement in the Same Manner in which the Agreement Would Have Been Initially Approved**

The district court concluded that the only statutory requirement necessary for the County to lawfully approve the Lease in the first instance was compliance with the Florida Sunshine law. Because the County reviewed the lease arrangement and agreed to continue using the leased computer systems at public meetings in May and June 1994, the district court concluded that the County had complied with the

12

Sunshine Law. We find no error in this conclusion.

Florida law does not require that the County issue a formal resolution to enter into a lease agreement. Conceding that no rule requires that a contract be approved by formal vote or resolution, the County nonetheless argues that common law requires some functional equivalent to establish that the County intended to adopt the lease-purchase agreement. However, the Florida Supreme Court has not articulated any specific requirement for such a functional equivalent. Indeed, in explaining the second prong of the Frankenmuth test, the Florida Supreme Court stated:

> In its opinion, the federal district court defined "approve" as "to have or express a favorable opinion of" or "to accept as satisfactory." In addition to the definition adopted by the federal district court, the dictionary definition of "approve" also includes "to give formal or official sanction to." Thus, the dictionary shows that the term "approve" may consist of either an informal or formal expression of assent.

Frankenmuth, 769 So.2d at 1020 (internal citations omitted). The County voted in June 1994 to adopt a computer networking plan that used the leased equipment. Whether deemed to be a formal or informal expression, there is no question that this action signified the County's assent to the use of the leased equipment.

The County, however, argues that before it can assent to any contract, either formally or informally, Florida law requires that the specific terms and conditions

13

of the contract be presented to the county commission at its public meeting. We are unable to find support in the cases cited by the County, or in Florida law generally, for such a proposition. For example, the County's reliance on Hoskins v. City of Orlando, 51 F.2d 901 (5th Cir. 1931) is misplaced. In Hoskins, the mayor of the city of Orlando had signed a lease for an apartment building. Id. at 902. That lease was later repudiated by the city. Id. The court invalidated the lease because it had not been made for a legitimate municipal purpose and was thus beyond the city's power. Id. at 904-05. Furthermore, unlike the case at bar, the lease at issue in Hoskins involved real property and thus implicated specific statutory requirements, including the unanimous vote of the city council. Id. While the city council had initially approved the lease unanimously, the lease ultimately signed by the mayor was so different from the original lease "as to amount to another transaction." Id. at 906.

Ramsey v. City of Kissimmee, 190 So.2d 474 (Fla. 1939), is likewise inapplicable. There, the court held that the city had not ratified an engineering contract because the city charter expressly required that all such contracts "be evidenced by resolution or ordinance." Id. at 112. Thus, ratification under that city charter was not possible absent formal resolution. There is no evidence in this case that Escambia County's Code requires a similar formal resolution to approve or

14

ratify a contract.  Frankenmuth, 769 So.2d at 1021.[9]

We conclude that the district court did not err in determining that the County's ratification of the lease complied with the Florida Sunshine Law and that such compliance was the only statutory requirement necessary for the County to lawfully approve a contract.  Since the Board in 1994 initially considered whether to integrate the Unisys system into its new computer network at a public meeting, and ultimately agreed to adopt a technology plan that included this equipment at a public meeting, the approval process satisfied the Sunshine Law's requirements.[10] Thus, the district court did not err in finding that the County had informally or implicitly adopted the lease agreement at these public meetings "in the same

---

[9]The County also relies on Town of Madison v. Newsome, 22 So. 270 (Fla. 1897), which is likewise inapposite.  The Newsome Court rejected an argument that the town had ratified a fixed-term employment contract for a night watchman.  In that case, the town council had continued to approve the item listed as the watchman's compensation each month.  However, this was the same compensation which had been paid to each of the plaintiff's predecessor night watchmen who had not been employed under a fixed-term contract and there had been nothing in the record by which the council could have realized that there had been any change in the status of the night watchman solely from his monthly compensation.  Newsome turns on a question of knowledge, the third prong of the Frankenmuth test, rather than the manner of ratification, the second prong.

[10]The County alternatively argues that the 1994 meetings cannot be used to satisfy the Sunshine Law requirement, as the County was not aware of all of the material terms of the lease purchase agreements at these meetings and, consequently, they do not count as part of the formal review process.  This argument, however, misses the mark. The Sunshine Law requires only that the approval of the lease occur in public and has no relevance to the level of information that the County must have in order to enter into a contractual agreement.  The inquiry into whether the County was aware of the material terms of the agreement is more properly considered under the third prong of the ratification test.  Frankenmuth, 769 So.2d at 1022.

15

manner in which the agreement would have been initially approved."

### 3. Whether the County Was Aware of the Material Terms of the Lease

The final prong of the <u>Frankenmuth</u> test requires the Board to have been aware of the agreement's material terms at the time it adopted or accepted the lease agreement. <u>Frankenmuth</u>, 769 So.2d at 1022-23 ("[w]henever . . . [an entity] is sought to be held liable on the ground of ratification, either express or implied, it must be shown that he ratified upon full knowledge of all material facts."). The district court concluded that the County had "full knowledge of the material terms" of the computer lease because: (1) over a three year period, the County had approved the Comptroller's budget, which consistently included a line item requesting funding for the lease payments; (2) the County had voted to change its technology plan to include the Unisys computer systems; and (3) in two separate audits, an independent auditing company had informed the County that it appeared that an official in its employ had entered into an unauthorized lease, and the County failed to investigate or repudiate the lease. The County argues that it was not aware of all of the material terms of the lease-purchase agreement because: (1) it was unaware of the non-substitution clause; (2) some equipment and pricing terms were added to the agreement after the 1994 meetings; and (3) it voted to use the computer systems without knowledge of the high financing costs associated with the lease

16

agreement.

The record reflects that between 1993 and 1994, the County was fully aware of the equipment and costs associated with the lease. Specifically, in August 1993, Flowers sent the Board Chairman and members of the Board a letter informing them about the installation of the Unisys mainframe computer, describing the computer's components, and disclosing his relationship with Unisys. Later, in May 1994, Flowers sent the County Board a letter indicating that the equipment had been updated, and suggesting that the County integrate his computers with the County's other computers to create an area network. By the June 1994 Commission meeting, when the Commission affirmed the plan to integrate the Comptroller's computer system into the County's network, the County Commissioners knew that Flowers had acquired new computer equipment and they knew about the characteristics of that equipment. Moreover, the County approved budget expenditures to pay the Lease for three consecutive years between 1992 and 1994, and therefore generally knew about the Lease's costs. Although the County correctly points out that the costs that Flowers budgeted for computer equipment before Flowers signed the Unisys Lease were substantially similar to the cost budgeted after he signed that particular lease, there is no question that the Commission was aware of the new lease because Flowers informed the County that he had acquired new computer

17

equipment in his letter of August 1993.

We are satisfied that the evidence supports the conclusion that the County was aware of the material terms of the lease, both because of the information specifically presented to the Commission and because the actual lease was at all times available to the Commission for reference. While Frankenmuth stated that the ratifying body "is charged only upon a showing of full knowledge" and not because it had information before it that should have prompted an inquiry, it further recognized that sometimes a petitioner can show that a party ratified an agreement because he "was willfully ignorant, or purposely refrained from seeking information, or that he intended to adopt the unauthorized act [or agreement] at all events, under whatever circumstances." Frankenmuth, 769 So.2d at 1022 (emphasis added). The evidence in this case suggests that the County intended to adopt the Lease regardless of its terms, as it made a long term commitment to use the equipment when it integrated the system into its network without inquiring into the Lease's specific financing requirements or penalties. Also, the County consistently granted the Comptroller funds to make the Lease payments for the three years before this dispute, and only challenged the arrangement after discovering that Flowers had committed other errors in running the Comptroller's office and deciding that he should be removed. Approval of the Comptroller's budget alone

18

may not have been enough to prove an intent to ratify the lease agreement, particularly given the similarity of the pre- and post- Unisys lease budget requests. Nevertheless, the budget approval, combined with the facts that the County knew Flowers had acquired a new computer system and agreed to integrate this system into its own computer system, is sufficient to prove intent to ratify. In sum, the evidence clearly supports the conclusion that the County intended to be bound by the agreement. Consequently, the Board's actions show that it made itself aware of the material aspects of the agreement that it believed were of primary concern, and therefore its actions satisfy the third part of the Frankenmuth test.

## II. Frankenmuth's Cross-Appeal

In its cross-appeal, Frankenmuth argues that the district court erred by using a statutory "prevailing party" analysis to deny its motion for attorneys' fees and costs. Frankenmuth argues that it was entitled to attorneys' fees and costs under the terms of the lease and that the lease grants attorneys' fees under a less stringent standard than the statutory "prevailing party" test. Paragraph 6 of the lease agreement provides that "Lessee shall pay Lessor all costs and expenses, including reasonable attorneys' fees, incurred by Lessor in enforcing any terms, conditions, or provisions of this Lease." In denying Frankenmuth's request for attorneys' fees, the court made no reference to the fee-shifting provision contained in the lease. The

court simply stated, "[i]t is further the judgment of this Court that neither Plaintiff nor Defendant Escambia County has prevailed in this action for the purposes of an award of attorneys' fees and costs."

Under Florida law, a " contractual attorney's fee provision must be strictly construed." B & H Constr. & Supply Co. v. District Bd. of Trustees of Tallahassee Cmty. Coll., Fla., 542 So.2d 382, 387 (Fla. 4th Dist. Ct. App. 1989). Determining whether to grant fees pursuant to a contractual provision is a separate and distinct inquiry from the statutory "prevailing party" analysis that is otherwise used to disburse fee awards. Fixel Enterprises v. Theis, 524 So.2d 1015 (Fla. 1988) (refusing to apply prevailing party standard when contract granted attorneys' fees to "prevailing party" because contract standard was separate and distinct from statutory prevailing party inquiry); First Atlantic Bldg. Corp. v. Neubauer Constr. Co., 352 So.2d 103 (Fla. 4th Dist. Ct. App. 1977) (recognizing that attorneys' fee provision in a contract provided for a different standard than the prevailing party analysis).

We review the district court's denial of attorneys' fees for abuse of discretion. In re Application to Adjudge Trinity Industries, Inc., 876 F.2d 1485, 1496 (11th Cir. 1989). From the district court's brief discussion of this issue, it is impossible to determine whether the court erroneously relied on the statutory

20

prevailing party standard or properly applied the contract terms in rejecting Frankenmuth's request for fees. <u>Id.</u> (remanding issue of denial of fees because "it is impossible for us to discern the correctness of the district court's judgment"). We therefore remand for determination of whether Frankenmuth is entitled to attorneys' fees pursuant to the lease provision.

## CONCLUSION

In summary, we **AFFIRM** the summary judgment in favor of Frankenmuth but **VACATE** and **REMAND** the district court's decision denying Frankenmuth attorneys' fees and costs for clarification.