[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 04-12740

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 6, 2005
THOMAS K. KAHN
CLERK

D. C. Docket No. 01-03084-CV-GET-1


CASCADE CROSSINGS II, LLC,

                                                      Plaintiff-Appellant,


                              versus


RADIOSHACK CORPORATION,
f.k.a. Tandy Corporation,                             Defendant-Appellee.


_____

Appeal from the United States District Court
for the Northern District of Georgia

_____


(May 6, 2005)


Before BLACK, WILSON and STAPLETON*, Circuit Judges.


_____

        * Honorable Walter K. Stapleton, United States Circuit Judge for the Third Circuit,
sitting by designation.

PER CURIAM:

The appeal currently before the Court raises the issues of waiver and entitlement to attorneys' fees under contractual provisions of a commercial lease. Appellant/Landlord appeals the District Court's rulings that Appellee/Tenant was entitled to revive waived rights under a product exclusivity provision and that the landlord was not entitled to attorneys' fees. For the reasons that follow, we reverse.

## I.

Appellant Cascade Crossings II, LLC ("Cascade" or "Appellant") owns a shopping center in Georgia. On October 27, 1995, Appellee RadioShack Corporation ("RadioShack" or "Appellee") entered into a commercial lease ("Lease") with Cascade. Section 26 of the Lease is a product exclusivity clause which provides:

> If Landlord leases, rents, or otherwise conveys any space within the Shopping Center to any tenant whose primary use involves the sale of electronic equipment and components, Tenant shall have the option to a) pay Landlord three percent (3%) of Tenant's gross sales, monthly, in arrears, in lieu of Tenant's obligation to pay Fixed Minimum Rent, Percentage Rent, and all additional charges as set forth in this Lease or b) terminate this Lease and each parties' obligations hereunder upon the giving of six (6) months' prior written notice thereof.

R1, Ex. A at 23.

Section 31 of the Lease is an attorneys' fees clause which provides:

> If either party hereto shall bring legal action against the other party, the prevailing party shall be entitled to reimbursement from the other party for all reasonable expenses thus incurred including reasonable attorneys' fees.

R1, Ex. A at 25.

On February 22, 1996, Cascade entered into a lease with BellSouth Mobility, Inc. ("BellSouth"), whose business included the sale of cellular telephone and related wireless services. From the middle of 1996 through the filing of this suit, RadioShack and BellSouth both operated in the shopping center and were aware of each other's presence.

RadioShack never objected to BellSouth's presence and met all of its obligations under the Lease, including rent payments, until the end of 2000. On November 14, 2000, however, RadioShack informed Cascade that BellSouth's presence violated § 26 of the Lease and that it would exercise its right under the exclusivity provision to pay 3% of its gross sales as rent–retroactive to December 1997. RadioShack calculated that it had overpaid approximately $41,000.00 in rent, gave itself a rent credit, and stopped making rent payments. RadioShack subsequently purported to exercise its option to extend its lease for an additional 5 year term at the 3% of gross profits rate.

On November 19, 2001, Cascade sued RadioShack in the United States District Court for the Northern District of Georgia. The Complaint sought: (1) a declaratory judgment that BellSouth's presence did not violate the exclusivity provision or, in the alternative, that RadioShack had waived any right it may have had to invoke the provisions of the exclusivity clause by waiting for nearly four years to provide notice of the purported violation; (2) a judgment for back rent; and (3) attorneys' fees and costs.

The parties filed cross-motions for summary judgment on all claims. The Court ruled that BellSouth's presence did violate the exclusivity clause, but that RadioShack had waived its right to invoke the 3% rent payment schedule for any payments prior to November 14, 2000. That ruling is not contested in this appeal. The Court further held, however, that RadioShack was entitled to insist upon its rights under the product exclusivity clause commencing on November 14, 2000. It is that decision, as well as the Court's denial of Cascade's request for attorneys' fees, that is at issue in this appeal.

Subject matter jurisdiction was proper in the District Court pursuant to 28 U.S.C. § 1332. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1291.

**II.**

Review of the District Court's grant of summary judgment is plenary.

4

*Kesinger ex rel. Estate of Kesinger v. Herrington*, 381 F.3d 1243, 1248 (11th Cir. 2004). "Summary judgment is proper if the pleading, depositions, and affidavits show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In reviewing a district court's order granting or denying summary judgment, this Court must construe all facts and make all reasonable inferences in the light most favorable to the non-moving party. *Kesinger*, 381 F.3d at 1248.

Review of the District Court's decision to deny attorneys' fees pursuant to a contractual provision is for abuse of discretion. *Frankenmuth Mut. v. Escambia Co.*, 289 F.3d 723, 733-34 (11th Cir. 2002).

**III.**

**A.**

Under Georgia law, waiver, once made, is irrevocable without consent of the other party. *See Day v. Fantastic Fitness, Inc.*, 378 S.E.2d 166, 167 (Ga. Ct. App. 1989) (stating that "[o]nce a known right, benefit, or advantage has been waived, it cannot be reclaimed"); *Hader v. Eastman*, 184 S.E.2d 478, 479 (Ga. Ct. App. 1971) (noting that "once a waiver has been made with knowledge of the facts and in the absence of fraud, it cannot be withdrawn"); *NY Underwriters Ins. Co. v. Noles*, 115 S.E.2d 474, 476 (Ga. Ct. App. 1960) (noting that "once the incidental

5

right or contractual benefit has been waived or relinquished, it cannot be reclaimed") (internal citations omitted); *Sentinel Fire Ins. Co. v. McRoberts*, 179 S.E.2d 256, 262 (Ga. Ct. App. 1934) (finding that where a party has voluntarily waived a right "with knowledge of the facts . . . and . . . without fraud by the other party. . . the party making the waiver cannot afterwards take back the right which was surrendered").

Cascade did not consent to a revocation or revival of RadioShack's waiver. It necessarily follows that the District Court was correct in holding that RadioShack was not in a position to give itself a rent credit on November 14, 2000. It also follows, we conclude, that the Court erred in holding that RadioShack's November 14, 2000, action enabled it to thereafter insist upon its rights under the product exclusivity clause.

While the District Court did not explain its conclusion that RadioShack was entitled to pay 3% rental after November 2000, it apparently agreed with RadioShack that RadioShack's lease gave it a new option each month that BellSouth was present in the shopping center and that each new option was not waivable until that month's rent was due. The problem with this theory, however, is that, as the Court found, RadioShack had full knowledge of BellSouth's presence and business activities by the middle of 1996 and its conduct over the

6

ensuing four years was inconsistent with any view other than it had no problem with that presence and activity. As the District Court expressly concluded, Cascade "reasonably relied upon [RadioShack's] more than four years of silence as an indication that the BellSouth store was not in conflict with the exclusivity provision." Op. at 13-14. There is ample record support for these determinations and, under these circumstances, we hold that RadioShack was not entitled to rely on BellSouth's store as an excuse not to pay full rent.

This is not a situation in which paying "three percent (3%) of Gross Sales . . . in lieu of Tenant's obligation to pay Fixed Minimum Rent, Percentages Rent and all additional charges as set forth in" the lease would or would not be beneficial to RadioShack, depending on the level of its gross sales. Under the formulas set forth in the lease, "Fixed Rent, Percentage Rent and all additional charges" would always exceed 3% of gross sales, and it would always be to RadioShack's economic advantage to invoke the product exclusivity provision in any situation it regarded as activating that provision.[1] Thus, the message inevitably sent to Cascade by RadioShack's conduct was that RadioShack did not regard the BellSouth store as implicating that provision. Moreover, it is equally clear that

---

1. Under those formulas, "Fixed Rent" and "Percentage Rent" alone would always equal or exceed 3% of RadioShack's gross sales.

7

Cascade relied upon that message in conducting its business affairs. In January of 2000, for example, Cascade renegotiated the BellSouth lease, effectively extending its term for an additional three years. Although Cascade had no reason to anticipate it given RadioShack's conduct, the effect of that action was to extend the period during which Cascade's right to collect full rent would be compromised under the RadioShack lease. Thus, Cascade reasonably relied to its detriment upon RadioShack's four years of silence, and RadioShack cannot now revive its rights under the product exclusivity clause based on the presence of BellSouth in the center.

**B.**

Cascade also challenges the District Court's ruling denying its request for attorneys' fees as the prevailing party at the summary judgment stage. Section 31 of the Lease provides that a "prevailing party" in a dispute under the Lease is entitled to attorneys' fees. A party prevails "when actual relief on the merits materially alters the legal relationship between the parties by modifying" the other party's behavior "in any way that directly benefits" the party. *Floyd v. Logisticare, Inc.*, 566 S.E.2d 423 (Ga. Ct. App. 2002). "[O]btaining some but less than all of the relief sought is sufficient to authorize an award of attorney fees." *Magnetic Resonance Plus v. Imaging Sys. Int'l*, 543 S.E.2d 32, 35-36 (Ga. Ct.

8

App. 2001).

The District Court denied Cascade attorneys' fees because it found both parties were prevailing parties at the summary judgment stage. Specifically, because the District Court granted Cascade's motions as to waiver and breach of contract but permitted Radioshack to invoke its rights under the exclusivity provision from November 14, 2000, onward, the Court determined that both parties prevailed and neither were entitled to fees. Because we now reverse the District Court's ruling in favor of RadioShack as to the exclusivity clause, Cascade is the only prevailing party and is entitled to attorneys' fees under Section 31 of the Lease.

## VI.

The judgment of the District Court will be reversed, and this matter will be remanded for further proceedings consistent with this opinion.

**REVERSED AND REMANDED**.